# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PATRICIA ROYBAL,

    Plaintiff,

vs.                                      Civ. No. 98-1407 JP/JHG

BRIAN MARTINEZ, individually and
in his official capacity; VINCENT
CRESPIN, individually and in his official
capacity; RON MADRID, individually
and in his official capacity; BENJAMIN
MONTANO, individually and in his official
capacity; and THE BOARD OF COUNTY
COMMISSIONERS, COUNTY OF
SANTA FE,

    Defendants,

## MEMORANDUM OPINION AND ORDER

On November 22, 1999 Defendants Brian Martinez and Vincent Crespin filed a Motion for Summary Judgment Based on Qualified Immunity (Doc. No. 20). That motion will be granted.

I.    Background

The undisputed facts (except where noted) and the reasonable factual inferences drawn in Plaintiff's favor reveal the following: Plaintiff is the former girlfriend of Pete Garcia ("Garcia"), the father of her minor daughter Shaila. Plaintiff and Garcia entered into a Stipulated Mutual Order Prohibiting Domestic Violence ("stipulated order"), filed May 8, 1997 in the First Judicial District of New Mexico. The stipulated order establishes four important things. First, it provides that Plaintiff and Garcia are to keep at least 100 yards between them at all times, except during

counseling appointments with Dr. Susan Cave.  Second, the stipulated order directs that "[i]f the parties are in a public location, the party who is there first has the right to stay and the other leave" (Defs' Memo. Ex. A at 4.)  Third, a handwritten notation in the margins of the stipulated order states: "Custody for child shall continue as before.  Father to have period of responsibility every Saturday 4:00 p.m. through Monday 6:30 a.m.  Exchanges to take place outside Walgreens, Villa Linda Mall[,] through Tandra Jaramillo or other person, as agreed by parties. . . Make-up visitation to be addressed through Dr. Cave.  Mother's Day visitation with [Plaintiff] Sunday at noon through Monday at 10:00 a.m." (<u>Id.</u> Ex. A. at 2.)  Fourth, it provides authority for a warrantless arrest so long as the arresting officer first establishes probable cause to believe that a party has violated any part of the order.  (<u>See id.</u> Ex. A at 6.)  All agree, correctly, that the necessary legal authorization for the warrantless arrest derives from the stipulated order.

On May 22, 1997 Dr. Cave apparently sent a letter ("Dr. Cave's letter") to Plaintiff and Garcia stating that the parties agreed to change the custody-exchange location to McDonald's on Airport Road in Santa Fe.  Dr. Cave's letter further stated that Plaintiff's mother, or, Plaintiff's husband[1] and niece, Melody, were new authorized intermediaries.  (<u>See</u> First Am. Compl. at ¶ 17 and Defs' Reply Ex. 1 at 52.)  Dr. Cave's letter is not a part of the court file.  There is some indication that Dr. Cave's letter also moved the Monday exchange from 6:30 a.m. to later in the morning.  There is no indication that Dr. Cave's letter modified the custody exchange conditions in any other way.

---

[1] Other indications in the First Amended Complaint and testimony are that Plaintiff was not married but rather has, or had, a steady boyfriend.  I note the apparent inconsistency only to recognize that no boyfriend or husband of Plaintiff was present to make a custody exchange on the day in question.

2

On Friday, June 13, 1997 at 10:00 a.m. Plaintiff planned to take custody of Shaila from Garcia. Plaintiff's mother would have taken Plaintiff's place that day but did not because she was called in to work. Therefore, Plaintiff drove her boyfriend's then ten year old son, Eric, and her teenage sister, Melodie,[2] to a location across the street from McDonald's to await Garcia's arrival at McDonald's. There is no indication as to what physical distance her parking space was from McDonald's. At approximately 10:35 a.m., when Garcia was in the McDonald's drive-through lane, Melodie got out of Plaintiff's car, crossed the street and approached Garcia's car, intending to return with Shaila. Plaintiff and Eric waited in Plaintiff's car. When Melodie did not return, Plaintiff sent Eric to see what was detaining Melodie. Eric left on foot and soon reported back to Plaintiff that Garcia refused to release Shaila to Melodie.[3] Eric then returned to McDonald's to

---

[2] This spelling used is taken from the First Amended Complaint. (See First Am. Compl. ¶ 19.) Although the parties later spell Plaintiff's sister's name "Melody," this Memorandum Opinion and Order will use the spelling adopted in the First Amended Complaint in an effort to maintain the distinction between what, apparently, are two different individuals: Plaintiff's niece Melody who was authorized by Dr. Cave's letter to act as an intermediary and Plaintiff's sister Melodie who was apparently not an authorized intermediary but who attempted to fulfill that role on the day in question. While it may be, as discussed infra, that these individuals are one and the same, neither party provides any elucidation whatsoever.

[3] Plaintiff testified that the individual who approached Garcia and asked for Shaila was on "the list." (Pls' Resp. Ex. 3 at 26.) The individual to whom Plaintiff referred, however, was her sister Melodie. As noted, Plaintiff's sister Melodie is not designated as an intermediary on any "list" provided to the court. Further, Plaintiff's own First Amended Complaint strongly suggests that Plaintiff's fifteen year old sister Melodie was not a designated go-between. (See First Am. Compl. ¶¶ 17, 19.) Still further, even if the fifteen year old girl who asked Garcia for Shaila is the same "Melody" noted in the First Amended Complaint as a person designated to be an intermediary, she shares that status in the conjunctive with a man designated as Plaintiff's "husband." In other words, a man is to accompany "Melody" on custody exchanges. (That Plaintiff's sister could not act alone as an intermediary makes eminent sense given that she was only fifteen years old during the events in question.) Again as noted, no husband or boyfriend was present with Plaintiff, Plaintiff's fifteen year old sister or niece, and Eric on the day in question.

3

get Melodie, which he did.

Before Melodie arrived at Garcia's vehicle and apparently at or just after the time Garcia arrived at the drive-through, Garcia saw Plaintiff's parked vehicle. Garcia did not see Plaintiff inside it but surmised that she was there. Garcia, still in his own vehicle in the drive-through, then asked a McDonald's employee to call the police to report that Plaintiff had violated the stipulated order. Plaintiff, meanwhile, with Melodie and Eric, left the area in her car.

Defendants Martinez and Crespin ("Defendant officers") were dispatched to McDonald's in response. Defendant Crespin was traveling southwest on Airport Road, not yet at McDonald's, when just after passing through the Jemez Road intersection he claims to have seen Plaintiff's vehicle, with Plaintiff, Melodie and Eric, exiting McDonald's. Plaintiff claims that she had left the vicinity of McDonald's to go to a nearby Allsup's where she planned, apparently, to call the police herself to report that Garcia refused to hand Shaila over. Defendant Crespin passed the Plaintiff, traveling in the opposite direction on Airport road, executed a u-turn, and pulled her over in the Allsup's parking lot. Defendant Crespin got out of his car, asked Plaintiff if she was Ms. Roybal, then directed her to drive to McDonald's. Plaintiff complied and Defendant Crespin followed in his car.

Meanwhile, Defendant Martinez arrived at McDonald's. There is much dispute as to whether Garcia was already inside the McDonald's when Defendant Martinez arrived or whether he went inside upon Defendant Martinez' arrival and then came back out. There is agreement that Garcia gave a copy of the stipulated order and a copy of Dr. Cave's letter to Defendant Martinez. There is a lack of clarity as to what Garcia and Defendant Martinez said to one another. Garcia testified that as he handed the paperwork just described to Defendant Martinez, Garcia offered a

4

verbal explanation which Defendant Martinez "didn't care to hear at that time." (Pl's Resp. Ex. 1 at 18.) Garcia also testified that he told Defendant Martinez that Plaintiff was "there" first. (Id.) Defendant Martinez testified (without objection) that Garcia told him that Plaintiff was at McDonald's in the parking lot to pick up Shaila, but that Plaintiff was not supposed to be there and was not supposed to pick up Shaila. Defendant Martinez does not recall if Garcia told him who arrived first and he does not recall having asked. In the same deposition Defendant Martinez also testified that Garcia told him that Garcia arrived first.

As Defendant Martinez was reading the documents Garcia provided, Defendant Crespin and Plaintiff arrived. Defendant Martinez passed at least the stipulated order, and perhaps also Dr. Cave's letter, to Defendant Crespin who read at least the stipulated order. According to Defendant Crespin, Defendant Martinez explained to Defendant Crespin that Garcia said Plaintiff was not to come near Garcia and that she "kept driving around" McDonald's. (See Pl's Resp. Ex. 4 at 16.) Defendant Martinez denies that Garcia told him Plaintiff was circling the restaurant. Garcia denies that Plaintiff did so and does not recall telling anyone that she did.

After the Defendant officers' consultation, Defendant Crespin approached Plaintiff who was still in her truck. Defendant Crespin asked her to step out. Plaintiff claims that he then said, "Are you--Do you know you're in violation of a Restraining Order?" (Defs' Memo. Ex. G at 32.) Plaintiff claims she answered "no." (Id. Ex. G at 33.) Defendant Crespin contends he asked Plaintiff if she was aware of the restraining order, to which she responded affirmatively and noted that she herself had petitioned for it. Defendant Crespin claims he further asked if she knew the consequences of violation to which she again responded affirmatively. Defendant Martinez testified that he also talked to Plaintiff who, he maintains, said she was at McDonald's to pick up

5

Shaila. Defendant Martinez further claims that Plaintiff told him that someone else should have been there in her place to make the exchange.

At that point Defendant officers jointly made the decision to arrest Plaintiff. Plaintiff testified that Defendant Crespin handcuffed her and placed her in a police vehicle, although in her First Amended Complaint she alleges Defendant Martinez executed the arrest. Defendant Crespin claims Defendant Martinez made the arrest.

As Plaintiff was taken into custody, Garcia completed a written statement which he supplied to Defendant officers after the arrest. In it, Garcia noted that he "came to drop off my daughter Shaila . . . and discovered [Plaintiff] present." (Pl's Resp. Ex. 6.)

Plaintiff was in jail from June 13, 1997 until the afternoon of June 16, 1997. On June 16, 1997 Defendant Martinez filed a criminal complaint against Plaintiff in Santa Fe County Magistrate Court. On October 9, 1997 the charges were dropped. On November 13, 1998 Plaintiff filed this case under, inter alia, section 42 U.S.C. § 1983.

II.     Standard

Defendant officers move for summary judgment on qualified immunity grounds. Qualified immunity provides immunity from suit for "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity shields "government officials performing discretionary functions" where the officials' conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The plaintiff bears the burden of 1) coming forward with sufficient facts to show that the defendant's actions violated a federal right and 2) showing that right was clearly established at the time. See Baptiste

6

v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998) (citing Clanton v. Cooper, 129 F. 3d 1147, 1153 (10th Cir. 1997)). "In order to carry [this] burden, the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. Rather, the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity. . ." Id. (quoting Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995)). Absent such a showing, the defendant prevails. See Romero, 45 F.3d at 1475 (citing Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 645 (10th Cir. 1988)). If the plaintiff meets her burden, the burden shifts to the defendant to show that no material issues of fact remain. See id. (citing Walter v. Morton, 33 F.3d 1240, 1242 (10th Cir. 1994).

When, as here, the discretionary function at issue is a warrantless arrest, "the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." See Baptiste, 147 F.3d at 1256 (quoting Romero, 45 F.3d at 1476). "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)). If a plaintiff fails to show that it was unreasonable for arresting officers to believe that they had probable cause, she fails to meet her burden in response to a claim of qualified immunity. See Walker v. City of Oklahoma City, No. 98-6457, 2000 WL 135166, at *5 (10th Cir. Feb. 7, 2000). Whether Defendant officers in this case had probable cause or reasonably believed they had probable cause to arrest plaintiff, based on the specific facts and circumstances of this case, is the only issue raised by the parties. Whether Defendant officers had probable cause depends on whether, at the moment of arrest, the

7

facts and circumstances within the Defendant officers' knowledge and about which they had "reasonably trustworthy information" were sufficient to warrant a prudent person in believing that Plaintiff had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964).

III. Analysis

Defendant Martinez testified that two factors led him to conclude that Plaintiff violated the stipulated order which provided the basis for the warrantless arrest: (1) that Plaintiff was present to make the custody exchange in Tandra Jaramillo's stead and (2) that Plaintiff had been within 100 yards of Garcia. Defendant Crespin testified that he concluded Plaintiff violated the stipulated order because of (1) Garcia's call to police, (2) Garcia's subsequent version of events, and (3) because Defendant Crespin saw Plaintiff leaving McDonald's. Defendant Crespin also testified that the arrest decision was mutual between the officers. To the extent Defendant Crespin relied on Defendant Martinez' determination that Defendant Martinez reasonably believed there was probable cause to arrest Plaintiff, Defendant Crespin was legally entitled to do so, as long as Defendant Crespin's reliance was reasonable, which it was. See Baptiste, 147 F.3d at 1260.

Plaintiff claims the officers lacked probable cause, or any reasonable belief that they had probable cause, because Defendant officers' failed to conduct a reasonable investigation. Plaintiff specifically claims that Defendant Martinez could have ascertained that Tandra Jaramillo was Garcia's sister and should have been at the exchange in Garcia's place, not Plaintiff's. Had Defendant Martinez made that determination he admits that Garcia, rather than Plaintiff, should have been arrested. Plaintiff next argues that she was not at McDonald's until Defendant Crespin ordered her there and that Defendant Crespin's claim to have seen her there is false. Plaintiff

8

further contends that Garcia's verbal and written statements indicate that Plaintiff was there first. As Defendant officers knew the stipulated order required the second to arrive to leave, Plaintiff claims they were unreasonable in not investigating who arrived first and ignoring evidence showing that Plaintiff arrived first. Plaintiff also claims that even if she did not arrive first, Defendant officers were unreasonable in failing to note that she attempted to comply with the stipulated order by leaving the McDonald's vicinity.

The law requires officers to conduct a reasonable investigation. What is reasonable varies, of course, upon the circumstances of each case. Defendants do not cite to any case for factual support. Plaintiff relies only on Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1432 (10th Cir. 1984), vacated on other grounds by City of Lawton v. Lusby, 474 U.S. 805 (1985). In Lusby, the Tenth Circuit found that an officer's reliance on a security guard's word that the plaintiff shoplifted was unreasonable where the officer failed to speak with a check-out clerk who could provide exculpatory information. See Lusby, 749 F.2d at 1432. In another case, the Tenth Circuit also found officers' reliance on security guards' representations that the plaintiff shoplifted was unreasonable in light of the known existence of a videotape of the incident in question. See Baptiste, 147 F.3d 1252, 1256 (10th Cir. 1998) . The court in Baptiste described the message of Lusby as "unequivocal: police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation." Id. at 1259. Arresting officers "may not ignore available and undisputed facts." Id. In contrast, the Tenth Circuit in Romero, 45 F.3d at 1476, found that officers reasonably relied on statements implicating the plaintiff in a murder. Plaintiff's burden in response to an assertion of qualified immunity required him to show that the statements upon which the

officer made the arrest were not reasonably trustworthy. See id. The court in Romero also noted that the cases state that the Fourth Amendment requires that officers reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire whether a crime has been committed before making a warrantless arrest. See id. The court also noted that there was no argument that the defendant failed to investigate the crime scene or that he acted unreasonably to information known to him at the time of arrest. See id. at 1477.

Plaintiff in this case has not met her burden in response to Defendant officers' claim to qualified immunity. Even under the conduct to which Plaintiff points, Defendant officers reasonably believed they had probable cause to arrest Plaintiff. Defendant officers responded to the 911 call and began an independent investigation, as they should have. Defendant Martinez took from Garcia a copy of the stipulated order and Dr. Cave's letter. Defendant Martinez reasonably believed from experience that the location designated for a custody exchange was where the parent with custody, in this case Garcia, passed the child to a third party intermediary, in this case either (1) Tandra Jaramillo, as established in the stipulated order, (2) Plaintiff's mother, or (3) Plaintiff's husband and niece, Melody, as established in Dr. Cave's letter. Defendant Crespin then arrived at McDonald's where he spoke with Defendant Martinez and read the same materials, which included the custody exchange terms.

Several aspects of Defendant officers' investigation are curious, but none indicates that Defendant officers unreasonably believed that they had probable cause to arrest Plaintiff. For example, Defendant Martinez' fixation on Tandra Jaramillo's absence suggests that he and Defendant Crespin failed to read Dr. Cave's letter, or that they read it and ignored its contents. Yet, attention to Dr. Cave's letter would not have changed a reasonable officer's view that no

named intermediary, or appropriate combinations of named intermediaries, was present. At most, learning that other individuals, instead of or in addition to Tandra Jaramillo, were designated to make the exchange would have prompted Defendant officers to ask whether any of those persons, all related to Plaintiff in some way, were present. Defendant officers would have learned that none of those persons, or combination of persons, was present. Defendant officers would reasonably have concluded therefore that Plaintiff was in violation of the order for not using the designated liaisons. Moreover, given the identities of the liaisons and the fact that Plaintiff was the parent taking custody, Defendant officers could reasonably place upon Plaintiff the consequences of the liaisons' absence.[4]

Also, Defendant officers' alleged failure to meaningfully question Plaintiff raises some concerns but does not defeat the claim for qualified immunity. Under Plaintiff's version, Defendant Martinez asked Plaintiff no pre-arrest questions and Defendant Crespin asked her only two. At Allsup's, he asked her name. Then, at McDonald's, he asked, "Are you--Do you know you're in violation of a Restraining Order?" (Defs' Memo. Ex. G at 32.) Plaintiff said "no" and was arrested. This testimony, if true, is hardly the unlimited opportunity to explain oneself that Defendant officers claim it to be. However, it cannot be said that Defendant officers acted unreasonably under this set of facts in failing to question Plaintiff further.

Specifically, it is difficult to discern what, if any, undisputed facts within Defendant

---

[4] If they only read the stipulated order, Defendant officers might also have asked why an exchange from Garcia to Plaintiff was taking place on a Friday at around 10 a.m. at McDonalds. If they had also read Dr. Cave's letter, they might at least have asked about the day and time. However, these omissions were not necessarily unreasonable. Defendant officers reasonably concluded that no prescribed intermediary was present. Thus, the success or failure of other necessary conditions for making an exchange became irrelevant.

11

officers' reach concerning who was to make the exchange would have rendered unreasonable Defendant officers' probable cause determination. Plaintiff claims that a further investigation by Defendant officers would have dispelled their unreasonable assumption that Tandra Jaramillo should have been present in Plaintiff's place and therefore Defendant officers would not have held Plaintiff responsible for Tandra Jaramillo's absence. Plaintiff may well be correct. Further questioning might have revealed to Defendant officers that Tandra Jaramillo is Garcia's sister and Defendant officers might then have been justified in attributing Tandra Jaramillo's absence to Garcia. However, additional undisputed available facts would actually bolster a reasonable finding of probable cause. Further investigation and questioning of Plaintiff about Tandra Jaramillo would certainly have revealed that not even Plaintiff expected Tandra Jaramillo's involvement in the attempted exchange on June 13, 1997. Plaintiff took great pains, Defendant officers would have learned, to avoid Garcia. Had Plaintiff expected Tandra Jaramillo instead of Garcia to deliver Shaila, such steps would have been unnecessary. Moreover, Plaintiff brought and employed her own unsanctioned intermediary, Defendant officers would have learned, which would have been unnecessary had Plaintiff expected Tandra Jaramillo to fill that role.[5]

Further questioning of Plaintiff and investigation by Defendant officers also would have likely corrected Defendant officers' belief that Plaintiff arrived on the McDonald's premises to take custody of Shaila. Defendant officers would have learned that Plaintiff arrived across the street from McDonald's but also that she sent Melodie to get Shaila. Such facts would have

---

[5] The stipulated order, on which Defendant officers relied, also does not indicate whose place, if any, Tandra Jaramillo was to take. Thus, it can hardly be said, contrary to Plaintiff's position, that to Defendant officers it was an available and undisputed fact that Tandra Jaramillo was to take Garcia's place.

indicated to Defendant officers that none of the individuals or combinations of individuals designated to shuttle Shaila from the parent relinquishing custody to the one assuming custody was present. Given the relationship to Plaintiff of these people listed in Dr. Cave's letter, plus Defendant Martinez' reasonable understanding of custody exchange procedure, it was or would have been reasonable for Defendant officers to hold Plaintiff responsible for the absence of the designees in Dr. Cave's letter. Thus, it cannot be said that available evidence within Defendant officers' reach would have rendered unreasonable a finding of probable cause.

Also, Defendant officers' motion should be granted given Plaintiff's failure to carry her burden of coming forward with facts sufficient to show that Defendants' actions violated a federal right. See Baptiste, 147 F.3d at 1255. It may well be that there is only one person named Melody or Melodie and that person is both the one who approached Garcia in the drive-through asking for custody of Shaila and one who is designated as an intermediary in accordance with Dr. Cave's letter, which is not before the court. However, Plaintiff has not adduced facts in support of the conclusion that there is only one Melody or Melodie and that she was an authorized go-between. Further, even if Plaintiff had carried her factual burden of demonstrating that the individual who approached Garcia and asked for Shaila was an authorized go-between, she has not shown that such individual was accompanied by Plaintiff's husband (or anyone else). In other words, regardless of the status of Melody or Melodie, Defendant officers reasonably concluded or would have concluded that they had probable cause to arrest Plaintiff for violating the custody exchange provisions of the stipulated order because Melody's or Melodie's required co-intermediary clearly was not present. Hence, it cannot be said that Defendant officers acted in a plainly incompetent fashion or with deliberate intent to violate the law.

13

The bulk of the remaining argument concerns what Defendant officers knew or could have known about the stay away provision and who arrived first. However, in light of the determination that Defendant officers acted reasonably in concluding that Plaintiff violated the order by failing to use a designated go-between, which they could reasonably assume Plaintiff should have provided, I see no reason to address whether Defendant officers reasonably concluded they had probable cause to arrest Plaintiff for coming within 100 yards of Garcia or for failing to leave if she was not the first to arrive in a public place. It is possible that Defendant officers acted unreasonably in concluding that they had probable cause to arrest Plaintiff for violation of the stay away and first to arrive provisions. But determining that officers acted unreasonably in one manner in which they found probable cause would not negate the prior finding that Defendant officers acted reasonably in concluding they had probable cause to arrest Plaintiff for attempting to take custody of Shaila in other than the prescribed manner. Cf. Romero, 45 F.3d at 1477-78 (finding officer's initial reasonable probable cause determination not negated by subsequent alleged unreasonable omission). Defendant officers will therefore be dismissed on the ground that they are qualifiedly immune from suit under section 1983.

IT IS THEREFORE ORDERED THAT Defendants Brian Martinez and Vincent Crespin's Motion for Summary Judgment Based on Qualified Immunity is granted and all claims asserted against them under 42 U.S.C. § 1983 will be dismissed.

_____
**UNITED STATES DISTRICT JUDGE**